UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| RAGEN H. HATCHER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 2:13-CV-353 RM |
| | ) | |
| GARY COMMUNITY SCHOOL CORP. | ) | |
| and BOARD OF TRUSTEES OF THE | ) | |
| GARY COMMUNITY SCHOOL CORP., | ) | |
| | ) | |
| Defendants | ) | |

OPINION and ORDER

This cause comes before the court on a motion to dismiss filed by defendants Gary Community School Corporation and the Board of Trustees of the Gary Community School Corporation (collectively "School defendants") and the School defendants' motion to strike plaintiff's Exhibit 2 attached to the complaint. Ragen Hatcher filed her objections to both motions, and the School defendants their replies. Having considered the parties' submissions, the court denies the motion to strike and grants the motion to dismiss in part and denies it in part.

FACTS

The Gary Community School Corporation employed Ragen Hatcher as in-house counsel from June 2006 through October 1, 2011. She says her term of employment with the School Corporation involved two contracts: upon her initial employment, she entered into a contract with the Board of Trustees for a

probationary period of 180 days, *see* Compl., Exh. 1 ("Attorney Employment Agreement"), and at the end of that period, she entered into a second contract with the Board of Trustees for her full-time in-house counsel position, *see* Compl., Exh. 2 ("Regular Teacher's Contract"). The School Corporation's school year runs from July 1 of one calendar year through June 30 of the next calendar year.

Ms. Hatcher reports that in January 2010, she received a "Notice of Possible Non-Renewal" from the Board of Trustees telling her that the Board couldn't guarantee that she would be retained in her position for the 2010/2011 school year "because, at this point in time, the District is uncertain as to the impact which imposed budgetary cuts will have on the district. This action in no way reflects upon the quality of your performance." Compl., ¶ 24. Ms. Hatcher continued in her position for the 2010/2011 school year.

In October 2010, Ms. Hatcher announced her candidacy for Mayor of the City of Gary. She says that in November 2010, February 2011, and again after a mayoral debate, Darren Washington, an elected member of the Board of Trustees, asked her to name him Deputy Mayor if she won the election. She says each time she told him that if she won the election, she would consider appointing him to that position. Ms. Hatcher asserts that her conversations with Mr. Washington on each occasion involved "constitutionally protected speech." Compl., ¶ 65.

Ms. Hatcher alleges that in June 2011 she began "hearing rumors" that Mr. Washington was lobbying the other members of the Board of Trustees to eliminate her position as in-house counsel. She says that during that same month, Mr.

Washington "reduced [her] job responsibilities by instructing her not to attend executive sessions of the [Board of Trustees]." Compl., ¶ 35. Mr. Washington became president of the Board of Trustees in July 2011.

Ms. Hatcher says that on August 29, 2011, after the start of the 2011/2012 school year, the Board of Trustees notified her that her position as in-house counsel was being eliminated October 1, 2011 because of financial constraints. According to Ms. Hatcher, the Board of Trustees' decision to eliminate her position was made during a closed door session on August 23, 2011 in violation of Indiana's Open Door Law. Compl., ¶ 42. She also claims that the Board of Trustees' explanation for eliminating her position was "a pretext for retaliation against [her] for not agreeing to appoint [Darren] Washington deputy mayor if she were elected Mayor of the City of Gary." Compl., ¶ 45. Ms. Hatcher asserts that the Board of Trustees "conspired to violate [her] constitutional rights under the First Amendment by agreeing to commit an illegal act." Compl., ¶ 41. Ms. Hatcher claims Mr. Washington retaliated against her for not agreeing to appoint him deputy mayor, tortiously interfered with her contractual relationship with the School Corporation, and intentionally induced the Board of Trustees to eliminate her position without justification. Compl., ¶¶ 55-59.

Ms. Hatcher filed her complaint in this court in September 2013 pursuant to 42 U.S.C. § 1983 for deprivation of her rights under the First and Fourteenth Amendments to the United States Constitution. Ms. Hatcher alleges, in Count 1, that the Board of Trustees unlawfully deprived her of her constitutional and civil

rights to due process and equal protection in violation of the Fourteenth Amendment, and, in Count 2, that the Board of Trustees deprived her of her constitutionally protected interest in freedom of expression in violation of the First Amendment. Ms. Hatcher seeks compensatory damages, including back and front pay, punitive damages, attorney fees, costs, and "an injunction enjoining the [Board of Trustees] to comply with the Indiana Open Door Law."

## MOTION TO STRIKE

The School defendants have moved to strike Exhibit 2 to Ms. Hatcher's complaint, an unsigned copy of a document entitled "Regular Teachers Contract" for the school year beginning July 1, 2007 and ending June 30, 2008. The School defendants say the document is misleading and should be stricken because Ms. Hatcher hasn't alleged that she is a licensed teacher who would be entitled to the collective bargaining rights afforded to teachers in the School Corporation.

Ms. Hatcher hasn't alleged that she is a licensed teacher, but she alleges in paragraphs 9 and 10 of her complaint that after her probationary period she and the Board of Trustees "entered into a Regular Teacher's Contract beginning July 1, 2007 and continuing under June 30, 2008 for the same services and benefits provided under the Probationary contract," which is attached to her complaint as Exhibit 1. Ms. Hatcher claims in response to the motion to strike that the "Regular Teacher's Contract" was used by administrators, as well as teachers, and she

4

explains further that she couldn't attach a signed copy of the contract because it wasn't part of her personnel file kept by the School Corporation.

Because further fact-finding would be needed for the court to determine whether the contract attached as Exhibit 2 is misleading, the court denies the School defendants' motion to strike without prejudice.

MOTION TO DISMISS

The School defendants have moved to dismiss Ms. Hatcher's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Ms. Hatcher has failed to state a claim upon which relief can be granted.

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of complaints that bring no actionable claim within the subject matter jurisdiction of the federal courts. The court must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff," yet, if necessary, may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 625 (7th Cir. 2007) (internal quotations and citation omitted). A federal court must assure itself that it has jurisdiction over the subject matter of a case before it can proceed to take any action on the merits. *See* Warth v. Seldin, 422 U.S. 490, 498 (1975) ("[T]he threshold question in every federal case [is]

determining the power of the court to entertain the suit."); Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006) ("At issue in a Rule 12(b)(1) motion is the court's very power to hear the case.").

Ms. Hatcher's complaint contains claims brought under 42 U.S.C. § 1983 seeking remedies for alleged constitutional violations committed under color of state law. Federal question jurisdiction under 28 U.S.C. § 1331 is present, and the School defendants' request, based on Federal Rule of Civil Procedure 12(b)(1), for dismissal of unspecified portions of the complaint for lack of subject matter jurisdiction must be denied.

The School defendants' motion to dismiss is also based on Federal Rule of Civil Procedure 12(b)(6), which allows a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted. A court deciding a Rule 12(b)(6) motion must accept as true the factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff without engaging in fact-finding. Reger Dev., LLC v. National City Bank, 592 F.3d 759, 763 (7th Cir. 2010); In re Consolidated Indus., 360 F.3d 712, 717 (7th Cir. 2004). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Under the pleading standard of Rule 8(a), a complaint

needn't contain "detailed factual allegations," but the allegations of the complaint "must be enough to raise a right to relief above the speculative level" and give the defendant fair notice of the claims being asserted and the grounds upon which they rest. Bell Atl. v. Twombly, 550 U.S. at 555; *see also* Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009) ("First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.").

The court addresses the School defendants' bases for dismissal in accordance with Rule 12(b)(6).

*Official Capacity Claims against the School Board*

The School defendants say that Ms. Hatcher's suit against the Board of Trustees amounts to a suit against the School Corporation, so her claims against the Trustees in their official capacities should be dismissed. Ms. Hatcher disagrees and claims the Trustees are proper defendants because they "have all financial and decision making power over the school district." Resp., at 3. Ms. Hatcher provides no support for her statement, and the law "is clear that official capacity claims are, in actuality, claims against the government entity." Baylor v. The Gary Public Library, No. 2:10-CV-395, 2011 WL 1526950, at *2 (N.D. Ind. Apr. 20,

7

2011). "Because federal § 1983 claims against the Trustees in their official capacities are redundant with the claims against the School Corporation," the court grants the motion to dismiss the federal claims against the Trustees in their official capacities. Eller v. Gary Community School Corp., No. 2:08-CV-307, 2010 WL 3719536, at *3 (N.D. Ind. Sept. 14, 2010).

*Indiana's Open Door Law*

The School defendants next say that Ms. Hatcher's claims under Indiana's Open Door Law are barred by the applicable statute of limitations based on Indiana Code § 5–14–1.5–7(b)(2), which provides that a complaint challenging "any policy, decision, or final action of a governing body" must be filed "within thirty (30) days of either: (A) the date of the act or failure to act complained of; or (B) the date that the plaintiff knew or should have known that the act or failure to act complained of had occurred; whichever is later." The School defendants note that Ms. Hatcher complains about actions taken by the Board of Trustees at their meeting on August 23, 2011, but she filed her complaint on September 30, 2013, more than two years after that August 2011 meeting. Thus, the School defendants say, her claims for violation of Indiana's Open Door Law are untimely and should be dismissed.

Ms. Hatcher says in response that she's not seeking a remedy under Indiana's Open Door Law. Instead, she says, her reference to the Trustees' violation of the Open Door Law was simply to provide additional evidence about

8

the secretive nature of her termination: "It is a relevant fact that should be considered in the overall claim." Resp., at 3. This statement conflicts with the allegations of paragraph 42 of the complaint (which alleges that the Trustees' discussion and vote to eliminate her position was held in a closed session on August 23, 2011 in violation of the Indiana Open Door Law), paragraph 47 of the complaint (which alleges that the elimination of her position was "in violation of the Indiana Open Door Law"), and paragraphs 76(a) and 80(a) (in which she seeks "an injunction enjoining the [Board of Trustees] to comply with the Indiana Open Door Law"). Ms. Hatcher hasn't challenged the School defendants' argument that any claim relating to the Board of Trustees' action at the August 23, 2011 meeting is untimely, so the court grants the motion to dismiss as to any claim Ms. Hatcher might be making with respect to the August 23, 2011 board meeting or any relief she may be seeking for violations of the Indiana Open Door Law.

*Fourteenth Amendment Claims*

The School defendants next assert that Ms. Hatcher's claims under the Fourteenth Amendment for the violation of her due process and equal protection rights should be dismissed because she was an employee at will and so not entitled to those protections. The contract upon which Ms. Hatcher relies had effective dates of June 13, 2006 through June 30, 2007 and so has expired, and, in any event, the contract provides that if terminated from her position as in-house attorney for the Gary Community School Corporation, Ms. Hatcher would

9

be entitled to "the pro rata payments accrued as of the date of termination, but shall have no other claims against the [School Corporation]." Compl., Exh. 1, ¶ 1. The School defendants say, too, that Ms. Hatcher hasn't alleged that she is a licensed teacher, so she wouldn't be entitled to additional rights under any collective bargaining agreement. According to the School defendants, because the contract relied upon by Ms. Hatcher has expired and she isn't a licensed teacher, the court should find that she was an employee at will and has no further remedies against them.

Ms. Hatcher responds by setting forth facts relating to contracts used or not used by the School Corporation, the terms and durations of those contracts, a School Corporation policy manual, and prior actions of the Board of Trustees with respect to the termination and/or rehiring of administrators, facts not contained in her complaint. When faced with a motion to dismiss, the court's job is to determine whether the facts contained in the complaint, when accepted as true, are sufficient to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 561, 570 (2007). Ms. Hatcher alleges in her complaint that she had a valid and enforceable contract with the School Corporation, Compl., ¶ 57, so the court can't conclude, as the School defendants have argued, that Ms. Hatcher was an employee at will. However, the complaint contains no allegations of a violation of collective bargaining rights, and even a liberal reading of the complaint convinces the court that the complaint contains no allegations of violations of Ms. Hatcher's due process or equal protection rights. To the extent

anyone might perceive such claims in the complaint, the court grants the motion to dismiss because the court can't find that the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant[s are] liable" for the violation of her due process and equal protection rights. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

*Indiana Tort Claims Act*

The School defendants maintain Ms. Hatcher's claims for wrongful discharge are barred because she didn't serve them with the notice required by the Indiana Tort Claims Act, IND. CODE § 34-13-3-8. They argue that "the retaliatory discharge of an employee at will gives rise to a cause of action in tort, rather than a claim for breach of contract," Deft. Memo., at 8 (*citing* Holtz v. Board of Comm'rs of Elkhart Cnty., 560 N.E.2d 645, 646 (Ind. 1990)), and because Ms. Hatcher was an employee at will she was required to comply with the notice requirements of Indiana Code § 34-13-3-10. The School defendants say they didn't receive any written notice before Ms. Hatcher filed her complaint, so her claims are barred.

The Indiana Tort Claims Act provides that "a plaintiff must file a Tort Claim Notice against the appropriate political subdivision when filing state law tort claims against a governmental authority in his individual capacity if the act or omission causing the plaintiff's loss is within the scope of the defendant's employment." Ebeyer v. Rodriguez, 909 F. Supp. 2d 1049, 1058 (S.D. Ind. 2012).

11

The Act's requirements don't apply to civil rights actions like Ms. Hatcher's that are brought solely under 42 U.S.C. § 1983. Holman, ex rel. D.R. v. Hensler, No. 1:08-CV-254, 2009 WL 4843336, at *4 (N.D. Ind. Dec. 14, 2009); Irwin Mortg. Corp. v. Marion Cnty. Treasurer, 816 N.E.2d 439, 447 (Ind. Ct. App. 2004). Ms. Hatcher doesn't dispute the assertion that she served no tort claim notice, but, as noted above, her allegation that she had a valid and enforceable contract with the School Corporation precludes a conclusion at this point in the proceedings that she was an employee at will, so the School defendants' motion to dismiss based on the Indiana Tort Claims Act will be denied without prejudice.

*First Amendment Claim*

The School defendants say Ms. Hatcher's free speech claim should be dismissed because the speech upon which she relies doesn't represent speech protected by the First Amendment. The School defendants also say that because Mr. Washington was only one member of the seven-person board, Ms. Hatcher's conversations with him are insufficient to establish that the Board of Trustees violated her First Amendment rights.

"When public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. However, public employees do not surrender their First Amendment rights by reason of their employment. So long as employees are speaking as citizens about

matters of public concern, they face only those speech restrictions necessary for their employers to operate efficiently and effectively." Drager v. Village of Bellwood, 969 F. Supp. 2d 971, 979 (N.D. Ill. 2013) (citations omitted). To state a claim for unlawful First Amendment retaliation, a public employee must allege that (1) she engaged in constitutionally protected speech; (2) she suffered a deprivation likely to deter her from exercising her First Amendment rights; and (3) her speech was a motivating factor in her employer's adverse action. Drager v. Village of Bellwood, 969 F. Supp. 2d at 978.

Ms. Hatcher alleges that, as a public employee, (1) her statements to Darren Washington didn't relate to her official employment, but, instead, related to a matter of public concern, Compl., ¶¶ 70-71; (2) the Trustees eliminated her position as in-house counsel in retaliation for her engaging in constitutionally protected speech and the deprivation she suffered is likely to deter her from exercising her First Amendment rights, Compl., ¶¶ 68-69; and her speech was a motivating factor in the Trustees' elimination of her position. Compl., ¶ 72.

The School defendants conclude that Ms. Hatcher's "conversations with Darren Washington do not give rise to First Amendment protection," Deft. Memo., at 10, but they have offered nothing more. The School defendants haven't argued that Ms. Hatcher wasn't addressing a matter of public concern nor have they challenged her allegation that her conversations with Mr. Washington about "who she might consider appointing Deputy Mayor if she won the election for Mayor of Gary, [addressed] a matter of public and community interest and concern."

13

Compl., ¶ 71. And while the School defendants conclude that Ms. Hatcher "has failed to show that the Board members violated [her] First Amendment free speech rights," they haven't challenged Ms. Hatcher's allegations that her speech was a motivating fact in the decision made by the Board of Trustees to eliminate her position. *See* Compl., ¶¶ 66, 72.

Accepting the complaint's factual allegations as true, as the court must do at this stage, Ms. Hatcher's allegations are sufficient to state a claim for unlawful First Amendment retaliation, and the School defendants' contrary conclusions, without more, don't justify dismissal of Count 2 of her complaint.

CONCLUSION

Based on the foregoing, the court DENIES the motion to strike [docket # 6] and with respect to the motion to dismiss [docket # 7],

    (1) DENIES the request for dismissal under Federal Rule of Civil Procedure 12(b)(1), and

    (2) GRANTS in part and DENIES in part the motion to dismiss [docket # 7] under Federal Rule of Civil Procedure 12(b)(6) in the following particulars:

        (a) the motion to dismiss the official capacity claims against the Board of Trustees is GRANTED;

        (b) the motion to dismiss any claim Ms. Hatcher might be making with respect to the Board of Trustees'

August 23, 2011 meeting or any relief she may be seeking for violations of the Indiana Open Door Law is GRANTED;

    (c) the motion to dismiss the due process and equal protection claims in Count 1 of the complaint is GRANTED;

    (d) the motion to dismiss the complaint under the Indiana Tort Claims Act is DENIED; and

    (e) the motion to dismiss the First Amendment retaliation claim in Count 2 of the complaint is DENIED.

SO ORDERED.

ENTERED:   June 11, 2014

                             /s/ Robert L. Miller, Jr.
                             Judge, United States District Court