UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| REGAN H. HATCHER, <br>     Plaintiff, <br><br> v. <br><br> GARY COMMUNITY SCHOOL CORPORATION, <br>     Defendant. | CAUSE NO.: 2:13-CV-353-PRC |

## OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss [DE 61], Defendant's Motion to Strike Plaintiff's Exhibit 2 [DE 63], and Defendant's Motion to Strike Plaintiff's Exhibit 3 and 4 [DE 64], all filed by Defendant Gary Community School Corporation (GCSC) on April 17, 2015. The motions are fully briefed and ripe for ruling.

## PROCEDURAL BACKGROUND

On September 30, 2013, Plaintiff Regan H. Hatcher filed a Complaint against the Gary Community School Corporation (GCSC) and the School Board of the Gary Community School Corporation. On June 11, 2014, the Court issued an Opinion and Order, granting in part and denying in part the Defendants' Motion to Dismiss the Complaint. After extensive proceedings to correct errors in Hatcher's attempts to file an amended complaint, on March 27, 2015, Hatcher filed a four-count First Amended Complaint against Defendant GCSC only; four exhibits are attached to the First Amended Complaint.

Hatcher's claims in the First Amended Complaint are breach of contract (Count I), tortious interference with a contract (Count II), deprivation of her due process and equal protection rights under the Fourteenth Amendment to the United States Constitution (Count III), and deprivation of

1

her rights of freedom of expression and freedom of speech under the First Amendment to the United States Constitution (Count IV). The following factual allegations are taken from the First Amended Complaint.

At all relevant times, Hatcher was an attorney licensed to practice law in the State of Indiana. In 2006, GCSC issued an Announcement of Administrative Vacancy for the position of School Attorney, who would be directly responsible to the GCSC Board of School Trustees ("GCSC Board"). On June 13, 2006, Hatcher and GCSC entered into an Attorney Employment Agreement, which provided for compensation and benefits. The Attorney Employment Agreement contained a provision for a probationary period of 180 days beginning June 13, 2006, and ending December 31, 2006.

Shortly after signing the Attorney Employment Agreement, the GCSC Board and Hatcher entered into a Regular Teacher's Contract, beginning July 1, 2006, "in the position of Administrator – In House Counsel." (First Am. Compl. ¶ 9). Under the Regular Teacher's Contract, Hatcher was given a salary as an Administrator, and the parties agreed that all laws governing the employment and dismissal of teachers would be construed to be part of Hatcher's Regular Teacher's Contract.

Hatcher served as full-time in-house counsel for GCSC.

The GCSC school year runs from July 1 through June 30. The 2006-2007 school year was the last year the GCSC Board signed new Regular Teacher's Contract with administrators. Despite not issuing new contracts in the following years, in December 2008, the GCSC Board sent all administrators, including Hatcher, a letter stating that the GCSC Board "is considering a decision not to renew your contract as an administrator for the 2009-2010 school year. The purpose of this letter is to give you written preliminary notice. A recommendation for non-contract renewal shall

be made no later than April 1, 2009. The reason being budgetary reductions. You will be afforded all due process rights pursuant to Board Policy No. 440." (First Am. Compl. ¶ 18, Ex. 2). In September 2009, outside of the statutory period, the GCSC Board attempted to fire administrators without notice. As a result, GCSC was required to "rehire or pay out contracts." (First Am. Compl. ¶ 20). In 2009, the GCSC Board was informed by the Indiana School Board Association that, because it continued to use the Regular Teacher's Contract for non-certified and certified employees, the GCSC Board had created a property right in the position under the contract under the due process clause of the Fourteenth Amendment to the United States Constitution. It was determined that the last contract signed was in effect until either it was terminated by the process in the Indiana state statute, the employee resigned, or the employee retired. This decision applied to Hatcher. Hatcher's Regular Teacher's Contract signed in 2006 was never terminated pursuant to Indiana state statute.

In a letter dated January 29, 2010, Hatcher received a "Notice of Possible Non-Renewal" that the GCSC Board "cannot guarantee that you will be retained in your current position for the school year 2010/11" due to the uncertain impact of budgetary cuts. (First Am. Compl. ¶ 29, Ex. 4). The letter provided, "Since you currently serve under a continuing indefinite contract with the Gary Community School Corporation, you will be entitled to additional due process before the Board can take final action." *Id*. at ¶ 31, Ex. 4. In the letter, the GCSC Board acknowledges the continuing indefinite contract with Hatcher and the need to follow Indiana state statute to terminate it.

In October 2010, Hatcher announced her candidacy for mayor of the City of Gary. In November 2010, Darren Washington, an elected member of the GCSC Board, asked Hatcher to name him deputy mayor if she won the election. Hatcher responded that, if she won, she would

consider appointing him as deputy mayor. In February 2011, Washington asked Hatcher the same question in the presence of others, to which Hatcher gave the same response. After a mayoral debate, Washington approached Hatcher and again asked her in the presence of others to appoint him deputy mayor if she won; Hatcher gave the same response. Shortly thereafter, Washington publicly supported Hatcher's opposition in the election. Hatcher was not elected.

In June 2011, Hatcher began hearing rumors that Washington was lobbying GCSC Board members to eliminate Hatcher's position as in-house counsel. On July 1, 2011, Washington became President of the GCSC Board. Beginning in July 2011, Washington reduced Hatcher's job responsibilities by instructing her not to attend executive sessions of the Board. Prior to July 2011, Hatcher had not been prevented from attending those sessions.

On August 19, 2011, after the beginning of the GCSC contractual year, Hatcher received notice that her position as in-house counsel would be eliminated because of financial constraints.

On August 23, 2011, the Board held a closed meeting, where it discussed and voted on the elimination of Hatcher's position as in-house counsel. The Board never discussed the elimination of the position in an open meeting. During the meeting, three Board Members stated that the decision to eliminate Hatcher's position was political. The GCSC Board eliminated Hatcher's position of in-house counsel as of October 1, 2011.

In the last days of her employment, Hatcher requested a copy of her Regular Teacher's Contract from Judy Cherry (no relation to the undersigned) in the Human Resources Department. Judy Cherry told Hatcher that the contract was missing from the file.

In December 2011, the GCSC Board hired an outside law firm at a cost of approximately three times Plaintiff's in-house counsel salary.

Prior to the elimination of her position, the GCSC Board never considered Hatcher's performance deficient.

In response to the First Amended Complaint, GCSC filed the instant motions.

**MOTIONS TO STRIKE**

Federal Rule of Civil Procedure 12(f) provides that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored because such motions often only delay the proceedings. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). However, if the motion removes unnecessary clutter from the case, then the motion serves to expedite, not delay, the proceedings. *Id*.

In the Motion to Strike Plaintiff's Exhibit 2, Defendant GCSC asks the Court to strike the Affidavit of Judy Cherry, which is Exhibit 2 to the First Amended Complaint. GCSC argues that the Affidavit should be stricken because it is not signed under the penalties of perjury as required by 28 U.S.C. § 1746. However, the Affidavit is notarized with the following language: "Before me, a notary public in and for Ascension County, State of Louisiana, personally appeared the above, and being first duly sworn upon his[sic] oath, says that the facts alleged in the foregoing instrument are true." (First Am. Compl., Ex. 2). Accordingly, because Exhibit 2 is not an unsworn declaration, 28 U.S.C. § 1746 is inapplicable. The Court denies the motion.

In the Motion to Strike Plaintiff's Exhibits 3 and 4, GCSC argues that the December 22, 2008 letter and the January 29, 2010 letter attached as Exhibits 3 and 4 to the First Amended Complaint should be stricken. GCSC argues that the letters do not contain information related to Hatcher and that neither letter indicates that Hatcher is an administrator. In her Complaint, Hatcher

5

alleges that she received these letters and that she was hired "in the position of Administrator – In House Counsel." (First Am. Compl. ¶ 9). Moreover, this matter is before the Court on a Motion to Dismiss, which requires the Court to accept as true all of the well-pleaded facts alleged by Hatcher and all reasonable inferences that can be drawn therefrom. No motion for summary judgment is presently before the Court for which the admissibility of evidence is at issue. The Court denies the motion.

## MOTION TO DISMISS

Defendant Gary Community School Corporation (GCSC) seeks dismissal of all four counts of Plaintiff Regan Hatcher's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

As for Rule 12(b)(1), GCSC offers no argument in support of dismissal for lack of subject matter jurisdiction. In fact, the Court already denied the same argument, raised by GCSC in the Motion to Dismiss the original Complaint. GCSC raises no new basis for challenging the Court's subject matter jurisdiction. This Court has original jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over related state law claims pursuant 28 U.S.C. § 1367(a). There is no basis for dismissal under Rule 12(b)(1), and the motion is denied to that extent.[1]

---

[1] The Court presumes that GCSC cites Rule 12(b)(1) in relation to its argument for dismissal of Count II for tortious interference with a contract based on Hatcher's failure to serve GCSC with an ITCA notice. Although Indiana state courts describe the ITCA notice as jurisdictional in nature with respect to Indiana courts, Indiana law does not define the subject matter jurisdiction of federal courts; rather, whether the state law jurisdictional requirements have been met is a predicate for stating a claim under the state's substantive law. *See Doe v. Lance*, No. 3:95-CV-736, 1996 WL 663159, at *5 (N.D. Ind. Oct. 30, 1996) (citing *Teague v. Boone*, 442 N.E.2d 1119, 1120 (Ind. Ct. App. 1982) (citing cases))); *Wade v. South Bend Public Transp. Corp.*, S86-488, 1989 WL 516281, at *2 n. 1 (N.D. Ind. May 16, 1989) (citing *Woods v. Interstate Realty Co.*, 337 U.S. 535 (1949)); *see also Meng v. IU Bd. of Trs.*, No. 1:06-CV-1550, 2007 WL 1877980, at *3-4 (S.D. Ind. June 27, 2007) (dismissing state claims under Rule 12(b)(6) for failure to file a timely tort claims notice).

Next, the Court considers the motion under Rule 12(b)(6), which tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on such a motion, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Second, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Tamayo*, 526 F.3d at 1082. The Supreme Court explained that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation marks and brackets omitted); *see also Iqbal*, 556 U.S. at 678-79; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Determining whether a complaint states a plausible claim for relief requires the Court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

The Court considers each of GCSC's bases for dismissal in turn.

## A. Due Process and Equal Protection Claims

In Count III of the First Amended Complaint, Hatcher alleges that GCSC unlawfully deprived her of her rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution. Count III of the First Amended Complaint includes all of the allegations made in Count I of the original Complaint as well as two additional allegations. *Compare* (Compl. ¶¶ 73-76), *with* (First Am. Compl. ¶¶ 102-107). Hatcher now alleges that, in the letter dated January 29, 2010, the GCSC Board acknowledged their continuing indefinite contract with Hatcher and the need to follow Indiana state statute to terminate that contract. *See* (First Am. Compl. ¶ 104). Hatcher further alleges that, during her last days of employment, she attempted to obtain from GCSC a copy of the original Regular Teacher's Contract but a GCSC representative indicated that the document was missing from her file. (First Am. Compl. ¶ 105).

In the "Operative Facts" section of the First Amended Complaint, Hatcher also includes the following additional factual allegations that were not in the original Complaint. After meeting with the Indiana School Board Association, it was determined that, even though administrators did not receive a new contract after 2006, the last contract signed was in effect until the contract was either terminated by the process in the Indiana state statute, the employee resigned, or the employee retired. *Id*. at ¶ 22. Hatcher was one of the class of employees included in this determination. *Id*. at ¶ 23. Hatcher was under the same contract with the same dates as the administrators that were in question. *Id*. at ¶ 24. At that meeting, GCSC was informed that because it had not terminated the previous contract, it was required to continue to operate under the last Regular Teacher's Contract signed for non-certified and certified employees. *Id*. at ¶ 25. Hatcher's original Regular Teacher Contract signed in 2006 was never terminated under the Indiana state statute. *Id*. at ¶ 27.

On November 13, 2013, GCSC filed a Motion to Dismiss the original Complaint, seeking, among other things, dismissal of Hatcher's claim for violation of her due process and equal protection rights under the Fourteenth Amendment. On June 11, 2014, the Court granted the Motion to Dismiss, finding that the original Complaint did not contain factual content that would allow the Court to draw the reasonable inference that GCSC violated Hatcher's due process and equal protection rights.

The portion of GCSC's brief in support of the current Motion to Dismiss the Fourteenth Amendment claims is *identical* to the portion of the brief offered in support of the Motion to Dismiss the original Complaint. Thus, GCSC does not address the new factual allegations raised by Hatcher or argue that she has not now stated a claim for relief based on these allegations.

As to Hatcher's due process claim, a claim brought under 42 U.S.C. § 1983 requires a plaintiff to show that (1) the conduct was by a person acting under the color of state law and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Under the due process clause of the Fourteenth Amendment,

> a deprivation of life, liberty, or property [must] be preceded by notice and opportunity for hearing appropriate to the nature of the case. [The Supreme Court has] described "the root requirement" of the Due Process Clause as being that an individual be given an opportunity for a hearing before he is deprived of any significant property interest. This principal requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment.

*Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 542 (1985) (quotation marks, citations omitted). In other words, to state a procedural due process claim under § 1983, Hatcher must allege "(1) a protected property interest; (2) a deprivation of that property interest by someone acting under the

9

color of state law; and (3) a denial of due process." *Booker-El v. Superintendent*, 668 F.3d 896, 900 (7th Cir. 2012).

GCSC argues, as it did in its first Motion to Dismiss, that Hatcher did not have a protected property interest in her employment, reasoning that Hatcher was an employee at will upon the expiration of her original contract and that she is not a teacher entitled to collective bargaining rights.

First, GCSC notes that the original Attorney Employment Agreement, which Hatcher attached to her First Amended Complaint as Exhibit 1 and which is for the period of June 13, 2006, through June 30, 2007, was signed by Hatcher and by the GCSC Board President and Secretary and provides that, in the event of termination, "the Attorney shall be entitled to the pro rata payments accrued as of the date of termination, but shall have no other claims against the Employer." (First Am. Compl., Ex 1). Thus, GCSC argues that, because her employment contract expired as an operation of law, Hatcher was an employee at will at the time her position was eliminated and has no remedy against Defendants. In its June 11, 2014 ruling, based on these same factual allegations brought in the original Complaint and the same argument raised in the first Motion to Dismiss, the Court held that it could not conclude that Hatcher is an employee at will because she alleges that she has a valid and enforceable contract with GCSC. The Court reaffirms that ruling.

Moreover, Hatcher includes additional allegations in the First Amended Complaint, detailed above, regarding the continuing, indefinite nature of the Regular Teacher's Contract that she and other administrators were working under through the date of her termination. She further explains in her response brief that the copy of the Board of Schools Trustee's contract was kept in the Legal Services office and the Human Resources Department of GCSC and that the Regular Teacher's

Contract was signed by the Superintendent and kept in the Human Resources Department of GCSC. In addition, when she was terminated from GCSC, she visited the Human Resources Department to obtain a copy of her employment file but that there were no contracts in the file. She states that the contracts had been removed. Both the Superintendent and the Human Resource Officer Specialist/Compliance Officer Judy Cherry indicated, when asked, that they did not know why Hatcher's contract was no longer in the employment file. Judy Cherry's Affidavit on this issue is attached to the First Amended Complaint as Exhibit 2. Judy Cherry avers that there was a Regular Teacher's Contract executed by Hatcher and GCSC in 2006 but that GCSC was unable to locate it. Hatcher argues that, as a result of the acts of GCSC and its agents, she is unable to produce her Regular Teacher's Contract at this time. However, she will seek the Regular Teacher's Contract through discovery and is not required as a matter of law to produce it in response to a motion to dismiss.

In addition, in a letter from GCSC to Hatcher, dated January 29, 2010, GCSC explicitly recognizes that Hatcher was serving under "a continuing and indefinite contract with the Gary Community School Corporation" and, therefore, was entitled to "additional due process before the Board can take final action." (First Am. Compl. Ex. 4). Hatcher argues that this contract created a property interest in her position as in-house counsel. Hatcher cites Indiana Code § 20-28-7 as setting forth the proper procedure for eliminating or cancelling a Regular Teacher's Contract in the middle of the contractual period. She also cites GCSC Policy 440.

Second, GCSC argues that Hatcher is not a teacher and is not entitled to collective bargaining rights. In support, GCSC notes that Hatcher has not submitted a teacher's administrator's contract nor does she allege that she is a licensed teacher in Indiana. GCSC argues that Hatcher cannot be

11

afforded the collective bargaining, due process, and equal protection rights afforded teachers and that the Affidavit of Judy Cherry stating that Hatcher signed a fully executed Regular Teacher's Contract does not provide Hatcher with a legal basis to be considered as a teacher. As a result, GCSC argues that Hatcher should be considered an employee at will with no property interest in her employment. At this stage of the litigation, GCSC's argument is not well taken. Hatcher is not alleging that she is a teacher but rather that, by executing a Regular Teacher's Contract with Hatcher and through subsequent correspondence, GCSC gave Hatcher a property interest in her employment as in-house counsel with GCSC. GCSC included Hatcher in all benefits and notices sent to all other administrators, further bestowing upon Hatcher the rights and privileges given not only by the Teacher's Collective Bargaining Agreement but also through GCSC's policies and procedures.

At this pleadings stage of the litigation, Hatcher's failure to produce a copy of the Regular Teacher's Contract is not fatal to her claim that she has a protected property interest in her employment. Hatcher has alleged facts to state a plausible claim for a due process violation under the Fourteenth Amendment based on a protected property interest in her employment. Thus, the Court denies the motion to dismiss the due process claim in Count III.

In contrast, Hatcher did not add any facts that would change the Court's June 11, 2014 ruling dismissing her equal protection claim. Like in her original Complaint, Hatcher again alleges that she is African-American and a female; however, she does not allege that she was treated differently based on either classification. Nor does Hatcher make any allegations that she was treated differently than anyone else that might support a "class-of-one" theory. *D.S. v. East Porter Cnty. Sch. Corp.*, 799 F.3d 793, 800 (7th Cir. 2015). Therefore, as no allegations have been added, the Court's earlier ruling that Hatcher has not stated an equal protection claim remains the law of the case, and the

Court grants the Motion to Dismiss Hatcher's Fourteenth Amendment equal protection claim in Count III.

## B. Statute of Limitations and Laches

*1. Statute of Limitations*

In its motion, GCSC argues that Hatcher's claim in Count II for breach of contract should be dismissed because the filing of the lawsuit on September 30, 2013, was outside the two year statute of limitations. Additional arguments raised for the first time in the reply brief are not properly before the Court.

It is "irregular" to dismiss a claim on statute of limitations grounds, "for the statute of limitations is an affirmative defense. A complaint states a claim on which relief may be granted whether or not some defense is potentially available. This is why complaints need not anticipate and attempt to plead around defenses." *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (citing Fed. R. Civ. P. 8(c); *Gomez v. Toledo*, 446 U.S. 635 (1980); *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623 (7th Cir. 2003)). The Court is mindful that "because the period of limitations is an affirmative defense it is rarely a good reason to dismiss under Rule 12(b)(6)." *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004); *see also Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). "But when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (citing *Brooks v. Ross*, 574, 579 (7th Cir. 2009)); *see also Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014).

GCSC bases is argument on the allegation in paragraph 45 of the First Amended Complaint that, "[o]n August 19, 2011, well after the beginning of the GCSC's contractual year, Plaintiff received notice that her position as In-House Counsel would be eliminated by the GCSC Board of School Trustees because of financial constraints." (First Am. Compl. ¶ 45). GCSC then cites Indiana Code § 34-11-2-1, which provides:

> An action relating to the terms, conditions, and privileges of employment *except actions based upon a written contract* (including, but not limited to, hiring or the failure to hire, suspension, *discharge*, discipline, promotion, demotion, retirement, wages, or salary) must be brought within two (2) years of the date of the act or omission complained of.

Ind. Code § 34-11-2-1 (emphasis added).

First, Hatcher is alleging termination of her employment based on a *written* Regular Teacher's Contract. Therefore, § 34-11-2-1 is inapplicable to her breach of contract claim.

Second, GCSC ignores paragraph 46 of the First Amended Complaint, which provides: "The GCSC Board of School Trustees eliminated Plaintiff's position of In-House Counsel as of October 1, 2011." *Id.* at ¶ 46. GCSC offers no legal argument why the August 19, 2011 date of notice and not the October 1, 2011 elimination of the position constitutes the "act complained of" that would trigger the two-year statute of limitations established by § 34-11-2-1, if applicable.

Therefore, the Court denies the Motion to Dismiss on the statute of limitations grounds.

*2.    Laches*

GCSC seeks dismissal based on the equitable doctrine of laches. Laches is an affirmative defense that has three elements: "(1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party." *Eli Lilly & Co. v. Arch Ins. Co.*, No. 1:13-CV-01770, 2015

WL 5287140, at *5 (S.D. Ind. Sept. 9, 2015) (citing *In re the Paternity of R.M.,* 939 N.E.2d 1114, 1120 (Ind. Ct. App. 2010) (citing *SMDfund, Inc. v. Fort Wayne-Allen Cnty. Airport Auth.*, 831 N.E.2d 725, 729 (Ind. 2005))).

The bases for GCSC's invocation of the doctrine are that Hatcher waited more than two years to bring the lawsuit after the Board's decision on August 23, 2011, the First Amended Complaint was not filed until March 27, 2015, several of the board members who made the decision are no longer on the Board, the headquarters of GCSC has moved since the filing of the original lawsuit, and Hatcher does not have a copy of the 2006 contract. GCSC does not explain how any of these facts satisfy the elements of the doctrine.

First, as noted above, it appears, from the allegations of the Complaint and the First Amended Complaint that this case was filed within any applicable two-year statute of limitations.[2]

Second, the doctrine of laches, as an affirmative defense, turns on the facts and circumstances presented in a particular case. *See Eli Lilly & Co.*, 2015 WL 5287140, at *5 (citing *In re the Paternity of R.M.*, 939 N.E.2d at 1120). This matter is only at the pleadings stage with an undeveloped factual record. Moreover, the doctrine of unclean hands can preclude the application of the doctrine of laches. *Indiana Mills & Mfg., Inc. v. Evenflo Co., Inc.*, 2005 WL 3150164, at *7 (S.D. Ind. Nov. 22, 2005) (citing *Hot Wax Inc. v. Turtle Wax Inc.*, 191 F.3d 813, 825 (7th Cir. 1999) (citing *Precision Inst. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945))). And, Hatcher has alleged that her 2006 Regular Teacher's Contract was missing from her personnel file.

---

[2] The Court recognizes that "[t]he doctrine of laches may bar a plaintiff's claim even though the applicable statute of limitations has not yet expired if the laches are of such character as to work an equitable estoppel (which contains the additional element of reliance by the defendant)." *Wilbur v. KeyBank Nat. Ass'n*, 962 F. Supp. 1122, 1131 (N.D. Ind. 1997) (citing *Siddall v. City of Michigan City,* 485 N.E.2d 912, 916 (Ind. Ct. App. 1985)). GCSC has not made this argument.

Third, GCSC cites no law that Hatcher must file the lawsuit while the same Board members who made the original decision still sit on the Board. Nor has GCSC explained how its move to a different location is prejudicial.

Accordingly, the Court denies the Motion to Dismiss based on the doctrine of laches.

## C. Tortious Interference with Contract–ITCA Notice

In Count II of the First Amended Complaint, Hatcher alleges that board member Darren Washington was aware of the valid and enforceable contract between GCSC and Hatcher because Washington was involved in the meetings with the Indiana School Board Association to determine the rights of administrators under their 2006-2007 contracts. Hatcher alleges that Washington intentionally induced the GCSC Board to eliminate Hatcher's contract without justification and that she was damaged.

In the Motion to Dismiss, GCSC argues that Hatcher's claim for tortious interference with contract should be dismissed because Hatcher failed to serve GCSC with an Indiana Tort Claim Act (ITCA) notice. The ITCA requires, as a prerequisite to a tort action, that notice to a political subdivision be filed within 180 days of the occurrence of the loss:

> Except as provided in section 9 of this chapter, a claim against a political subdivision is barred unless notice is filed with:
>
> (1) the governing body of that political subdivision; and
>
> (2) the Indiana political subdivision risk management commission created under IC 27-1-29;
>
> within one hundred eight (180) days after the loss occurs.

Ind. Code § 34-13-3-8. The GCSC falls within the definition of a political subdivision of the State of Indiana for purposes of the ITCA. *See* Ind. Code § 34-6-2-110(9); *see also Meury v. Eagle-Union*

16

*Cmty. Sch. Corp.*, 714 N.E.2d 233, 241 (Ind. Ct. App. 1999) ("Claims against school corporations and their employees are subject to the Indiana Tort Claims Act (ITCA) notice of claims provisions.").

There is no general duty to exhaust state administrative remedies before bringing a § 1983 action. *See Felder v. Casey*, 487 U.S. 131 (1988). Nevertheless, the ITCA applies to pendant state claims in § 1983 suits. *Alexander v. City of South Bend*, 256 F. Supp. 2d 865, 875 (N.D. Ind. 2003) (citing *Meury*, 714 N.E.2d at 242). "A governmental entity's immunity from liability under the ITCA is a question of law for the court." *Id.* at 875 (citing *City of Anderson v. Davis*, 743 N.E.2d 359, 362 (Ind. Ct. App. 2001)). However, failure to serve notice under the ITCA is considered an affirmative defense. *Brown v. Alexander*, 876 N.E.2d 376, 283-84 (Ind. Ct. App. 2007). A complaint need not anticipate affirmative defenses in order to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)); *see also Hurt v. Vantlin*, 2015 WL 5837615, 2015 WL 5837615, at *12 (S.D. Ind. Oct. 6, 2015) (denying a motion to dismiss based on the timeliness of the ITCA notice "because that is an affirmative defense that Plaintiffs need not have anticipated in filing their complaint" (citing *Antey v. Donahue*, No. 3:12-CV-85, 2013 WL 466222, at *4 (S.D. Ind. 2013))).

In this case, unlike in *Hurt* and *Antey*, in which the defendant attached a copy of the ITCA notice and then argued that the notice was untimely, GCSC is arguing that Hatcher did not serve the requisite ITCA notice at all. In her response brief, Hatcher does not contend that she did file a notice under the ITCA; rather, she asserts only that compliance with the ITCA is not required for federal civil rights claims. Nevertheless, Hatcher has not admitted that she did not file the ITCA notice. Because failure to comply with the notice requirement is an affirmative defense and because "non-

17

compliance with the notice requirement has on occasion been excused on theories of substantial compliance, waiver, and estoppel," *Washington v. Schumann*, 2:09-CV-270, 2013 WL 5314610, at *6 (N.D. Ind. Sept. 13, 2013), at this stage of the litigation, the Court denies the motion to dismiss Count II for failure to serve an ITCA notice. *See Adams v. Traylor-Wolff*, No. 2:11CV365, 2012 WL 3061837, at *2 (N.D. Ind. July 25, 2012) (denying a motion to dismiss because the "plaintiff's silence on the ITCA in his complaint was not dispositive on the issue."). However, GCSC may raise the ITCA notice issue on summary judgment, if appropriate.

### D. First Amendment Claim

In Count IV of the First Amended Complaint, Hatcher alleges that GCSC deprived her of her constitutionally protected interest in freedom of expression and speech under the First Amendment to the United States Constitution. The allegations in Count IV of the First Amended Complaint are identical in all material respects to the allegations in Count II of her original Complaint.

On November 13, 2013, GCSC filed a Motion to Dismiss the original Complaint, seeking, among other things, dismissal of Hatcher's First Amendment claim. On June 11, 2014, the Court denied the Motion to Dismiss as to Hatcher's First Amendment claim, holding that Hatcher's "allegations are sufficient to state a claim for unlawful First Amendment retaliation, and the School defendants' contrary conclusions, without more, don't justify dismissal of Count 2 of her complaint." (June 11, 2014 Opinion and Order, at 14). The portion of GCSC's brief in support of the current Motion to Dismiss is identical to the brief filed in support of the original Motion to Dismiss. The Court's June 11, 2014 ruling is law of the case. The Court denies the Motion to Dismiss as to Hatcher's First Amendment claim in Count IV.

**CONCLUSION**

Based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** the Motion to Dismiss [DE 61], **DENIES** Defendant's Motion to Strike Plaintiff's Exhibit 2 [DE 63], and **DENIES** Defendant's Motion to Strike Plaintiff's Exhibit 3 and 4 [DE 64]. The Court **DISMISSES without prejudice** the Fourteenth Amendment equal protection claim in Count III for failure to state a claim. All other counts and claims remain pending.

SO ORDERED this 22nd day of October, 2015.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT